UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEWIS J. HALLETT : | |
|     Plaintiff : | |
| : | CIVIL ACTION NO. |
| v. : | 3:11-cv-1181 (VLB) |
| : | |
| MICHAEL J. ASTRUE, : | |
|     COMMISSIONER : | September 24, 2012 |
| SOCIAL SECURITY ADMINISTRATION, : | |
|     Defendant : | |

**MEMORANDUM OF DECISION ADOPTING THE RECOMMENDED RULING, GRANTING THE PLAINTIFF'S MOTION TO REMAND AND DENYING THE COMMISIONER'S MOTION TO AFFIRM**

Before the court is the plaintiff, Lewis Hallett's Motion to Reverse the Decision of the Commissioner which argues that the Commissioner's findings are not supported by substantial evidence and that the final decision was not rendered in accordance with law. [Dkt. 13]. In response, the Commissioner has filed a Motion for Order Affirming the Decision of the Commissioner. [Dkt. 17]. The plaintiff has responded to the Commissioner's reply with a Memorandum to Defendant's Motion for Order Affirming the Decision of the Commissioner. [Dkt. 24]. Having reviewed Magistrate Judge Thomas P. Smith's recommended ruling [Dkt. 19], the Court ADOPTS his recommended ruling for the reasons discussed below and remands this case for further development of the record. Plaintiff's Motion for an order reversing the decision of the Commissioner is GRANTED. The Commissioner's motion for an order affirming his decision is DENIED.

I. <u>Administrative Proceedings</u>

1

On September 30, 2008, the plaintiff completed his application for social security benefits alleging that he became disabled on June 5, 2007. [Tr. 112]. The plaintiff filed this application alleging that he is limited in his ability to work due to several physical and three psychological conditions. He alleges that he suffers from debilitating shoulder pain and weakness, rendering him unable to lift and twist his arms and shoulders. He further claims to suffer constant neck pain, a popping sensation on his left elbow and both weakness and pain in his low back. He also claims that he has trouble concentrating and sleeping, lacks focus, and has anti-social behaviors. [Tr. 138].

He stated that he initially stopped working because his conditions required surgical intervention. Id. The job he noted he maintained the longest was "quality insurance" for a medical facility. [Tr.138-39]. In that capacity, he lifted over 100lb. boxes and frequently lifted less than 10lbs. [Tr. 139]. Plaintiff stated in his application that, since his injury, he "takes each day as it comes" but noted that he is able to "grocery shop, complete household chores, cook and entertain family friends." [Tr. 145-46, 149].

The plaintiff was found to be disabled based on the application and medical evidence he submitted. [Tr. 64] However, the finding was that plaintiff became disabled and therefore eligible to receive benefits on February 24, 2009, not the alleged June 5, 2007 date Mr. Hallett claimed. Id. On May 14, 2009, the plaintiff filed his Request for Reconsideration in which he argued that he has "not been able to engage in any type of gainful employment since June 5, 2007. [Tr. 68]. ALJ Eileen Burlison held a hearing on October 12, 2010 for the limited purpose of

determining whether the claimant was entitled to benefits between the alleged onset date and the determined onset date. [Tr. 15]. On February 22, 2011, the ALJ issued her decision affirming the date of onset and declining to extend the claimant's benefits to 2007. [Tr. 14].

The ALJ applies a five-step sequential evaluation process to an application for supplemental security income. First, the ALJ determines whether the claimant is performing substantial gainful work activity. 20 C.F.R. §416.920(a)(4)(i). If the claimant is not performing such activity, the ALJ proceeds to the second step to determine whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments. §416.920(a)(4)(ii). The impairment must be expected to result in death or must last or be expected to last for a continuous period of at least twelve months. §416.909. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment meets or equals an impairment listed in appendix 1 of the applicable regulations. §416.920(a)(4)(iii). If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

If the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. §416.920(a)(4)(iv). RFC is defined as the most that a claimant can do despite the physical and mental limitations that affect what he can do in a work setting. §416.945(a)(1). If the claimant's RFC indicates that he cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available

in the national economy in light of his RFC, age, education, and work experience. §416.920(a)(4)(v). The claimant is entitled to supplemental security income if he is unable to perform other such work. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).

In the present case, the ALJ determined that the claimant last met the insured status requirements of the SSA on June 30, 2010, that he did not engage in substantial gainful activity during the period from his alleged onset date of June 5, 2007 through February 24, 2009, and that during that period, the claimant had the following severe impairments: bilateral shoulder arthritis with instability status post-surgery; and cervical degenerative disc disease. [Tr. 10]. However, the ALJ determined that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 11]. Finally, the ALJ determined that the claimant had the RFC to perform a limited range of work based on the claimant's alleged symptoms, objective medical evidence and credible opinion evidence. [Tr. 11-12]. The ALJ sated that "the records (sic.) as a whole indicate that the claimant had some capacity to work during the relevant period as his limitations were not significant enough to preclude all work activity." [Tr. 13]. Consequently, the ALJ found that the claimant was not under a disability as defined in the SSA during the relevant two-year period for which the claimant sought narrow review. [Tr. 14]. The Decision Review Board selected plaintiff's claim for review but then notified him on May 27, 2011 that it had failed to

4

complete its review of the ALJ's determination within the required 90 days. [Tr. 1]. The ALJ's decision thus became final.

On July 27, 2011, the plaintiff filed the instant appeal and on August 2, 2011, the case was referred to Magistrate Judge Thomas P. Smith ("Judge Smith"). On February 14, 2012, the plaintiff filed a Motion for Order Reversing the Decision of the Commissioner [Dkt. 13]. He argued that the Commissioner's decision was not based on substantial evidence and that the decision was not rendered in accordance with law. On April 26, 2012, the Commissioner filed a Motion for Order Affirming the decision of the Commissioner arguing that substantial evidence in the record did support his adverse finding. [Dkt. 17].

On July 16, 2012, Judge Smith issued an Opinion recommending that the findings as to onset date should be reversed based on overwhelming evidence that the claimant has been disabled since June 5, 2007. [Dkt. 19]. Judge Smith's recommendation was based on a finding from the record that in spite of substantial evidence supporting the ALJ's determination of the February 4, 2009 onset, "much more substantial evidence indicat[es] that plaintiff was disabled at least as of June 5, 2007." Id. at p.2.

For the reasons discussed below, the Court concurs with Judge Smith and ADOPTS the recommended ruling.

II.   **Standard of Review**

Following the denial of a supplemental security income claim, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a

5

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  § 42 U.S.C. §405(g); *see also id*. §1383(c)(3).

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error.  Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

III.    <u>Discussion</u>

The Social Security Act ("SSA") defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The SSA has promulgated

6

administrative regulations for determining when a claimant meets this definition. *See* supra p.3.

The evaluation of medical opinion evidence is governed by 20 C.F.R. §404.1527.  Subsection (b) provides: "In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  Subsection (c) provides further explanation as to how submitted medical evidence will be credited: "The examining relationship, treatment relationship, length of relationship and frequency of examination, nature and extent of the treatment relationship, supportability by evidence, consistency, and specialization of the doctor."  Finally, this provision clarifies that the Commissioner is reserved with the final dispositive determination of disability.  Subsection (d)(1) provides:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

Social Security Rulings ("SSR") are promulgated "under the authority of the Commissioner of Social Security.  They are binding on all components of the Social Security Administration.  These rulings represent precedent final opinions and orders and statements of policy interpretations that [the agency] has adopted."  20 C.F.R. §402.35(b)(1).  SSR 83-20 is a statement of policy and interpretation that has been adopted by the Administration that describes the onset of disability under both Title II and XVI claims.  The introduction states:

7

> **In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits. In title II worker claims, the amount of the benefit may be affected; in title XVI claims, the amount of the benefit payable for the first month of eligibility may be prorated. Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.**
> **In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received.**

Id. at *1.  The Policy Statement continues:

> **Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.**

Id.  With respect to non-traumatic (injuries from which the claimant is not expected to die) onset, the SSR instructs:

> **In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.**

Id. at *3.  Finally, this SSR clarifies the process for the ALJ's determination of onset where inferences from the evidence presented are necessary because precise evidence of onset is not available:

> **The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.**

8

**Id.**

"The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir.1999)(finding the ALJ to have committed legal error where he failed to fully develop the record and, instead discredited the treating physician's assessment); 20 C.F.R. § 404.1527(d)(2). An ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. *See Halloran,* 362 F.3d 28, 32 (2d Cir. 2004)(affirming the ALJ's determination to discredit the treating physician because he provided "good reasons" and such determination was supported by evidence in the record); 20 C.F.R. § 416.927(d)(2). "We do not hesitate to remand when the Commissioner . . . do[es] not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran,* 326 F.3d at 33. Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa,* 168 F.3d at 79. Instead, the ALJ has an affirmative duty to develop the administrative record, regardless of whether the claimant is proceeding *pro se* or is represented by counsel. *Id.*; *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996) (affirming a denial of benefits because the ALJ fully developed the record and considered the claimant's treating physician's records), *Taverez v. Barnhart*, 124 Fed.Appx. 48, 49 (2d Cir. 2005) (vacating and remanding where the ALJ's rejection of the treating physician's opinions was not supported by substantial evidence). The rule in the Second Circuit on this point could not be clearer:

9

> **The treating physician rule states that the treating physician's opinion on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence.**

*Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (vacating and remanding to the district court where new evidence of injury would be sufficient for remand to the Secretary but affirming the application of the treating physicians rule to the evidence presented by claimant) *quoting Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988) (clarifying Section 223(d)(5) of the Social Security Act, as amended by the Social Security Disability Benefits Reform Act of 1984). *See also Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) ("The expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary."). As a necessary corollary, the opinions of "examining physicians" are entitled to very little weight, particularly when they contradict the treating physician's testimony. *Torres v. Bowen*, 700 F.Supp. 1306 (S.D.N.Y. 1988) (reversing and remanding where the ALJ failed to support his RFC conclusion and disregarded the evidence presented from the treating physician). *See also Kahle v. Commissioner of Social Sec.*, 845 F.Supp.2d 1262 (M.D.Fla. 2012) ("The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining

physician is generally entitled to more weight than the opinion of a non-examining physician.") (internal citations omitted).  Thus, "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole . . . ." *Hancock v. Secretary of Health, Education, and Welfare,* 603 F.2d 739, 740 (8th Cir.1979) (reversing where ALJ based determination of non-disability on consulting physician's report).  *See also Smith v. Sullivan,* 776 F.Supp. 107 (E.D.N.Y.1991) (reversing where ALJ based the determination of non-disability on two one-time examining physician's reports).  Disregard of this "treating physician" rule is itself a sufficient basis for remand.  *Balke v. Barnhart*, 219 F.Supp.2d 319, 322-23 (E.D.N.Y. 2002)(remanding where the ALJ failed to properly apply the rule and justify disregard of the treating physicians' opinions).

     Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician.  *See Peed v. Sullivan,* 778 F.Supp 1241, 1246-47 (E.D.N.Y. 1991) (noting that the significance of the treating physician is that this evidence provides the unique opportunity to develop an informed opinion about the claimant, reversing and remanding for failure to apply the treating physician rule), *Ayer v. Astrue*, 2012 WL 381784, No. 2:11-CV-83 (D.Vt. Feb. 6 2012) (applying the *Peed* analysis to represented claimant and remanding because the ALJ failed to adequately develop the record), *Donato v. Secretary of Health & Human Services,* 721 F.2d 414, 419 (2d Cir.1983) ("we have regarded a treating physician's diagnosis, to the extent it is uncontradicted, as binding").

**What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is his opportunity to develop an informed opinion as to the physical status of a patient. See Peed at 1246.  To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.  It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.  See Peed at 1246 (noting the significance and import of the treating physician's records).**

Because a social security disability hearing is non-adversarial, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services,* 13 F.3d 359, 360-61 (10th Cir.1993) (reversing and remanding for further development of the record where ALJ fails to inquire about past relevant work and to base the determination at step for of the analysis on substantial evidence).  "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (internal citation omitted) (discussing the ALJ's obligations and the nature of the proceedings).  Where the ALJ fails to fulfill the duty to develop the record, the reviewing district court should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial

of benefits for further development of the evidence.  *See Rivera v. Barnhart*, 379 F.Supp.2d 599 (S.D.N.Y. 2005) (reversing and remanding where the ALJ failed to fully develop the record regarding claimant's work history and alleged physical and mental disabilities).

In the instant case, Judge Smith has recommended remanding this matter "to the Commissioner for the purposes of calculating and paying the plaintiff the benefits he is due."  Opinion at 1.  Supporting this conclusion, Judge Smith indicates that he has reviewed the record presented on appeal and concluded that "there is much more substantial evidence indicating that plaintiff was disabled at least as of June 5, 2007."  Id. at 2.  His opinion states that "there is no evidence that plaintiff's subjective complaints of pain are exaggerated" and notes that, while the treating physician's statement indicates that he does not believe the plaintiff could be gainfully employed is not controlling "in the statutory sense" it should "speak[] to the severity of impairments in the opinion of an expert."  Id. at 3 and 4.  Remand is thus recommended because, amongst several noted legal errors, the Commissioner "appears to have erred in his handling of evidence supplied by plaintiff's treating physician."  Id. at 4.  The Commissioner objects to the recommended ruling because he argues that "Judge Smith's Recommendation is contrary to both the Commissioner's regulations and well-settled precedent in this jurisdiction, and the Commissioner therefore urges that his objection be sustained."

After thorough review of the record, the Court finds that the claimant has presented copious medical records from his treating physical therapist at Star

Sports Therapy and Rehabilitation.  Viewed as a whole, those records indicate that the claimant had limited responsiveness from his treatment and that his range of motion and flexibility were minimally responsive to injections between February 27, 2007 and November 6, 2007.  *See, e.g.* [Tr. 294, 297, 305-05, 307, 322].  He has also supplied records from his visits with Dr. Norman Kaplan of Connecticut Orthopaedic Specialists, P.C.  This treating physician's notes consistently discuss neck spasms, shoulder pain, depression, and limited range of motion between October 8, 2007 and April 2, 2008.  *See* Tr. 287-97.

    The record indicates that the claimant had an independent medical consultation with Dr. Dante Brittis who found a current "full disability" on December 11, 2007.  Tr. at 307.  Subsequent evaluation by Dr. Brittis on June 4, 2008 indicated that, in spite of the patients' "improvement on ranges of motion, improvement of strength, with pain only noted at the extremes of motion and with increased activities," the claimant "still appears to be having fairly significant symptoms."  Tr. at 304-05.  This physician concludes that he concurs with Dr. Kaplan and that the limitations are related to injuries sustained on January 30, 2007.  Tr. at 305.  Finally, consultative examination by Dr. Charles Livsey on January 19, 2009 concurred that the limitations and pain alleged by the claimant were consistent his history.  Tr. at 321.

    This Court agrees with Judge Smith's recommendation and finds that the claimant has presented evidence from two treating sources, his physical therapist and Dr. Kaplan of an ongoing injury that has been largely unresponsive to medical intervention during the June 5, 2007 alleged onset date through the

February 24, 2009 date subsequently found. Not only did the treating physician and physical therapist, who saw the claimant on multiple consistent occasions throughout the duration of this period in dispute indicate that he was limited and unresponsive, but the examining physician concurred with this finding.

This evidence would be sufficient to support the plaintiff's claim of onset date. However, the Court also notes that his application for benefits lists daily activities that he is able to complete: "grocery shop, complete household chores, cook and entertain family friends." [Tr. 145-46, 149]. Such activities appear inconsistent with the medical evidence. Therefore, it is not clear from the record whether the ALJ properly credited the treating physician's findings.

This Court is unable to and it would be the inappropriate forum for resolving the apparent discrepancy between the application statements and the conclusions of two treating physicians. Such deficiency is a legal error and the proper remedy is remand. The ALJ should inquire of the treating physicians whether or not they maintain their conclusion of disability in light of the claimant's asserted activities in his application and to reconcile their opinion with these statements. Accordingly this case is remanded for further administrative proceedings in accord with Judge Smith's recommended ruling and this order for further development of the record.

IV. Conclusion

The Court ADOPTS Judge Smith's recommended ruling and remands this case for further development of the record. Accordingly, the plaintiff's motion to

reverse [Dkt. 13] is GRANTED, and the Commissioner's motion to affirm [Dkt. 17] is DENIED.  The Clerk is directed to close this case.

                                                IT IS SO ORDERED.
                                                _____/s/_____
                                                Vanessa L. Bryant
                                                United States District Judge

Dated at Hartford, Connecticut:  September 24, 2012.